FILED & ENTERED

FEB 25 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ESTAVAN CAPITAL LLC,<br><br>Debtor. | Case No. 2:14-bk-17882-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION ON AMENDED MOTION OF U.S. BANK NATIONAL ASSOCIATION FOR RELIEF FROM STAY AND ANNULMENT OF THE STAY** |

Pending before the court is the Amended Motion of U.S. Bank National Association for Relief from the Automatic Stay ("Movant" and "Motion"). ECF 44. Movant seeks relief from, and retroactive annulment of, the automatic stay pursuant to 11 U.S.C. § 362(d)(1), (2) and (4) related to real property at 52 Via Brida, Rancho Santa Margarita, CA 92688 ("Property"). Debtor Estavan Capital LLC ("Debtor") opposes the motion. Although Debtor's Chapter 7 bankruptcy case was dismissed on September 9, 2014, and the automatic stay terminated by operation of law pursuant to 11 U.S.C. § 362(c)(2)(B), the motion is not moot because Movant seeks retroactive annulment of the automatic stay and in rem relief pursuant to 11 U.S.C. § 362(d)(1) and (4).

1	Hearings on the original Motion for Relief from the Automatic Stay were held on September 16, 2014, and October 7, 2014, and hearings on the amended Motion for Relief from Stay were held on December 9, 2014 and January 13, 2015.  The court scheduled and conducted an evidentiary hearing on the Motion on February 11, 2015 to determine genuine issues of material fact regarding the various discretionary factors that a bankruptcy court should consider in considering whether to grant or deny retroactive annulment of the automatic stay.  Appearances were made at the evidentiary hearing as noted on the record.  At the conclusion of the evidentiary hearing, the court took the matter under submission and set a further hearing for a final ruling on the Motion for March 3, 2015 at 11:00 a.m.

After conducting the evidentiary hearing, it appears that the material facts are mostly undisputed, though this was not apparent from the parties' papers relating to the Motion, and factual development was required at trial.  On April 24, 2015, Debtor initiated this case by filing its voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C., on April 24, 2014, and the petition listed Movant's loan servicer, Sage Point Lender Services, LLC ("Sage Point"), as a creditor. *See Petition*, ECF 1 at. 6.[1]  Debtor's address was listed on the petition as "700 N. Pacific Coast Hwy, Suite 202A, Redondo Beach, CA 90277."  On May 8, 2014, Debtor filed its Summary of Schedules, Schedule D, Creditors Holding Secured Claims, Schedule A, Real Property, Schedule E, Creditors Holding Unsecured Priority Claims, and Schedule F, Creditors Holding Unsecured Nonpriority Claims, all reflecting liabilities of $0.00.  ECF 12, 16, 17 and 18.  Schedule A, Real Property, and Schedule D, Creditors Holding Unsecured Priority Claims, listed the Property as its only real property asset with a listed value of $456,000, but listed the amount of the secured claims encumbering the Property as $0.00 and such claims were not marked as contingent, unliquidated or disputed.  ECF 13 and 16.

---

[1] The court takes judicial notice of items on the court's docket in this case pursuant to Federal Rule of Evidence 201(c)(1).

2

Movant's servicer, Sage Point, as foreclosure trustee, conducted a foreclosure sale of the Property on May 23, 2014, which was after Debtor filed its Chapter 7 bankruptcy petition. A trustee's deed upon sale for the Property was recorded on June 3, 2014, in which Sage Point as foreclosure trustee conveyed title to the Property to Movant. *Motion*, Exhibit 1. Movant served a notice to quit addressed to "NEVINE CARMELLE AND ALL UNKNOWN OCCUPANTS" on June 18, 2014. *Id.* Exhibit 2. Movant initiated an unlawful detainer action in the Superior Court of California for the County of Los Angeles on July 15, 2014. *Id.* Exhibit 3.

In the tentative ruling on the Motion prior to the December 8, 2014 hearing, the court identified *In re Fjeldsted*, 293 B.R. 12 (9th Cir. BAP 2003), as relevant case authority regarding the discretionary factors that the bankruptcy court might consider in granting or denying a request for a retroactive annulment of the automatic stay. *Fjeldsted* sets forth twelve factors which the bankruptcy courts in the Ninth Circuit should evaluate in determining whether to grant retroactive annulment of the automatic stay under 11 U.S.C. § 362(d). In setting out the factors in *Fjeldsted*, however, the Bankruptcy Appellate Panel was careful to caution that "such lists are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard. In any given case, one factor may so outweigh the others as to be dispositive." *In re Fjeldsted*, 293 B.R. at 25.

As discussed below, the court recites the *Fjeldsted* factors and considers how they would apply to the factual circumstances in the case at bar:

**1. Number of filings;**

This factor weighs in favor of annulment. There were two prior bankruptcy cases which affected the Property: (1) *In re Nezine Tadrous aka Nezine Carmelle*, No. 8:09-bk-19436 RK[2]; (2) *In re Estavan Capital LLC,* No. 2:13-bk-31084 TD Chapter 7 (dismissed

---

[2] The court will refer to Nezine Tadrous/Carmelle as "Ms. Carmelle," as that is how she identified herself at trial. *Trial Testimony of Nevine Carmelle*, February 11, 2015, 9:26 a.m.

3

on September 13, 2013). Ms. Carmelle is the managing member of Estavan Capital, LLC, and was previously title owner of the Property, and the borrower on the subject loan, as she testified at trial. *Trial Testimony of Nevine Carmelle*, February 11, 2015, 9:29-9:32 a.m. Debtor's prior bankruptcy case was dismissed for failure to file bankruptcy schedules in a timely manner.

**2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;**

This factor weighs in favor of annulment. This is a repeat filing as Debtor filed a prior Chapter 7 bankruptcy case in 2013, which was dismissed for failing to file bankruptcy schedules. Although Debtor did not repeat the prior mistake in its 2013 bankruptcy case and did file bankruptcy schedules in this case, its bankruptcy petition was skeletal, and what schedules it did file were not serious attempts at describing Debtor's financial status, i.e., listing all liabilities at $0.00, including Movant's secured claim on the Property. Debtor's principal, Ms. Carmelle, testified at trial that she took out the refinancing loan secured by trust deed now held by Movant and that she admitted that she and her partners were delinquent in payments on the loan. *Trial Testimony of Nevine Carmelle*, February 11, 2015, 9:34-9:36 a.m. In light of such admissions, Debtor in listing the secured claim at $0.00 showed the lack of a good faith intent in filing this case and the intent to delay or hinder its creditors.

**3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;**

This factor weighs in favor of annulment. Movant will be prejudiced in having to incur additional costs by having to redo the postpetition foreclosure sale on its lien on the Property if annulment of the automatic stay is not granted to validate the prior sale. That is, Movant would have to cause a new foreclosure sale of the Property and bring new unlawful detainer proceedings. While no bona fide purchaser at the prior foreclosure sale is involved here since Movant credit-bidded to become the purchaser at the sale, the weighing of the circumstances favors Movant in light of the *Fjeldsted* factors discussed

4

1 herein, particularly, lack of effective notice of the automatic stay to the foreclosure trustee
2 when the foreclosure sale was conducted, Debtor's intent to delay or hinder creditors and
3 Debtor's lack of good faith in filing this case as shown by its insincere bankruptcy
4 schedules filed in this case and its unexcused failure to attend a meeting of creditors
5 under 11 U.S.C. § 341(a).

**4. The Debtor's overall good faith (totality of circumstances test)**

In evaluating bad faith in a Chapter 7 case, some courts consider factors employed in the context of Chapter 11 and Chapter 13 "bad faith" dismissal motions. *In re Mitchell*, 357 B.R. 142, 153-154 (Bankr. C.D. Cal. 2006). The court finds that a number of the factors listed in *Mitchell* are present in this case, and therefore finds that this factor weighs in favor of annulment. The *Mitchell* factors evident here are: (1) Debtor listed no income or assets and filed a skeletal bankruptcy petition; (2) repeat bankruptcy filings affecting the Property by Debtor and its principal, Ms. Carmelle; and (3) Debtor's intent to invoke the automatic stay for improper purposes – for the sole purpose of forestalling the state law enforcement actions of a single creditor – as shown by the bankruptcy schedules showing no intent to repay the loan made to Ms. Carmelle on the Property.

**5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;**

This factor weighs in favor of annulment. Movant and its servicer and foreclosure trustee, Sage Point, did not have adequate notice of Debtor's bankruptcy filing at the time of the foreclosure sale. Debtor claims that it gave notice of the bankruptcy in three different ways: (1) by telephone, (2) by email, and (3) by regular mail. At trial, Debtor argues that there is adequate evidence of notice to Movant and Sage Point as follows:

• Email from Stanley Bowman to Stephanie Vasquez on April 24, 2014, forwarding the "Notice of Bankruptcy Case Filing" email from the Central District Bankruptcy Court. *Opposition*, ECF 51, Exhibit B.

1    Sage Point denies receiving this email.  *Reply*, ECF 56 at 4:24; *Trial Testimony of
2  Stephanie Vasquez*, February 11, 2015, 12:10-12:12 p.m.  However, Ms. Vasquez, a
3  Sage Point employee, a default specialist, testified that her email address is
4  svasquez@sagepointls.com, which was the address of the recipient of the email attached
5  as Exhibit B, which was received into evidence.  *Id.* at 12:14 p.m.  The court finds it more
6  likely than not that this email was delivered to Ms. Vasquez at Sage Point, but finds that
7  this was not sufficient notice to Sage Point and thereby, Movant.  As discussed above,
8  Debtor was not the borrower on the loan being serviced by Sage Point – Ms. Carmelle
9  was the borrower.  The email message contained no context for Sage Point to connect
10 Debtor with the loan it was servicing for Movant, and essentially invited the recipient,
11 Sage Point, to put together the pieces of the puzzle of Debtor's skeletal bankruptcy
12 filings, and make the connection to the subject loan to Ms. Carmelle as the borrower.  As
13 noted above, Debtor's bankruptcy petition listed its address as 700 N. Pacific Coast
14 Highway and listed estimated assets as "$0 to $50,000."  *See Petition*, ECF 1.  There
15 was nothing in Debtor's bankruptcy filings at the time of the email sent to Ms. Vasquez on
16 April 24, 2014, which indicates the automatic stay would apply to the Property.  If Debtor
17 intended the automatic stay to apply to the Property, it should have said so in the email
18 message to Sage Point's employee in order to give sufficient notice of the effect of the
19 bankruptcy filing to Sage Point, which would be soon conducting the foreclosure sale of
20 the loan to Ms. Carmelle on the Property.
21    Debtor argues that Movant should have been able to link the Property to it
22 because "Debtor had title, possession and had been making mortgage payments on the
23 property to the lender since 2005. . . ."  *Supplemental Opposition to Amended Relief
24 From Automatic Stay*, ECF 61 at 7:17-20.  There is insufficient evidence to support this
25 assertion.  The only evidence in support of it is an unauthenticated grant deed dated
26 September 1, 2005, purporting to transfer the Property from Nevine Carmelle to Estavan
27 Capital LLC, a Wyoming Limited Liability Company.  *Supplemental Opposition to
28 Amended Relief From the Automatic Stay*, ECF 58, Exhibit B.  There is also evidence of

6

1  another grant deed, recorded on September 10, 2012, which purports to transfer interest
2  in the Property from Nevine Carmelle to Estavan Capital LLC, a Wyoming Limited
3  Liability Company.  *Declaration of Javier Rivera in Support of Motion for Relief from*
4  *Automatic Stay*, ECF 44, Exhibit 4.  However, there is no showing that Sage Point was
5  ever on notice of these deeds transferring title of the Property to Debtor.
6        Debtor's claim that Sage Point should have been on notice of its connection to the
7  Property because Debtor was making payments on the subject loan is similarly
8  unsubstantiated and lacking in credibility.  Ms. Carmelle testified that Debtor was making
9  payments on the loan until sometime in 2012.  *Trial Testimony of Nevine Carmelle*,
10 February 11, 2015, 9:35-9:38 a.m.  There is no evidence to corroborate this testimony,
11 and again, there is nothing to link Debtor to Ms. Carmelle, who is the borrower on the
12 subject loan – the loan being serviced by Sage Point.  Even if the court accepts as true
13 the testimony that Debtor was making payments on the subject loan, this is not sufficient
14 to establish that Debtor's bankruptcy case would affect the Property – there are a number
15 of possible reasons that a borrower would have an LLC make payments on property
16 owned by the borrower (e.g., the LLC may have owed money to Debtor, which it was
17 repaying by making payment to a third party – again, no evidentiary showing was made
18 of any notice to Sage Point that Debtor was on title to the Property).
19       Therefore, based on this evidence, the court determines that Debtor has not met
20 its burden of proof in showing that Movant should have been aware that a bankruptcy
21 petition filed by Estavan Capital LLC, and the resulting automatic stay on collection action
22 would affect the Property.  *See* 11 U.S.C. § 362(g) (although the moving party seeking
23 stay relief has burden of proof on the issue of debtor's equity in the property, the
24 opposing party has the burden of proof on all other issues).
25 •    Two telephone calls from Mr. Bowman's office to Sage on April 25 and June 15,
26 2014. *Opposition*, ECF 51, *Declaration of Stanley Bowman*, ¶¶ 3, 4; *Trial Testimony of*
27 *Stanley Bowman*, February 11, 2015, 10:16-10:18 a.m.; *Trial Testimony of Nevine*
28 *Carmelle*, February 11, 2015, 9:42-9:45 a.m.

Case 2:14-bk-17882-RK    Doc 64    Filed 02/25/15    Entered 02/25/15 17:43:56    Desc
Main Document    Page 8 of 11

The court does not find credible the testimony of Mr. Bowman and Ms. Carmelle regarding telephonic notice of Debtor's bankruptcy filing to Sage Point on April 25, 2014 before the foreclosure sale on May 24, 2014. Both of these witnesses testified that they observed and overheard a third party, Mr. Bowman's secretary, dial Sage Point's telephone number and talk to the person answering the telephone, purportedly giving oral notice of Debtor's bankruptcy filing to Sage Point, but there is no testimony or declaration by this person who purportedly dialed the telephone number and made the telephone call.

The court finds that the testimony of Mr. Bowman and Ms. Carmelle regarding purported telephonic notice of Debtor's bankruptcy filing to Sage Point lacks credibility in part because both Mr. Bowman and Ms. Carmelle lack personal knowledge as to what number Mr. Bowman's secretary dialed or whom the secretary spoke to – there is insufficient evidence to support a finding that Mr. Bowman or Ms. Carmelle had personal knowledge as to what number was dialed or with whom the secretary spoke as required by Federal Rule of Evidence 602.

The court further finds the testimony of Mr. Bowman and Ms. Carmelle on this point lacks credibility because it is unlikely that Mr. Bowman's secretary would have given information to Sage Point sufficient to put Sage Point on notice of Debtor's bankruptcy filing in the telephone call, but Mr. Bowman would not have put the same care and effort into giving notice of such information by mail or email.

- Expert testimony of William Svihra, a former letter carrier with the United States Postal Service. Mr. Svihra, who was previously Mr. Bowman's letter carrier, testified that mail would likely still be delivered to its intended recipient, even if the intended recipient's suite number was left off of the mailing address. *Trial Testimony of William Svihra*, February 11, 2015, 10:05-10:07 a.m. This testimony was relevant because the suite number for Sage Point Lender Services LLC, the loan servicer of Movant, was omitted from Debtor's creditor mailing matrix in this case, and mailed notices to Sage Point in this bankruptcy case would have also lacked the suite number.

The court finds Mr. Svihra's testimony to be credible, and finds that Sage Point likely received mailed notice of Debtor's bankruptcy filing, despite the fact that Debtor omitted Sage Point's suite number in the creditor mailing matrix.  However, this finding does not help Debtor's position because the same problem which applies to Debtor's attempted notice by email applies to its attempted notice by mail – there is nothing in Debtor's initial filings that indicates creditor actions by Sage Point or Movant would have been affected by Debtor's bankruptcy filing or the automatic stay on such action arising upon the filing.

Based on this record, the court finds that Sage Point and Movant did not receive notice sufficient to inform them that a stay affected the Property at the time of the foreclosure sale.

**6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;**

This factor weighs in favor of annulment.  The bankruptcy case was dismissed because a representative of Debtor failed to appear at the last meeting of creditors under 11 U.S.C. § 341(a) meeting as required by the Bankruptcy Code.  Ms. Carmelle, who was Debtor's representative, testified at trial that she missed the last noticed meeting of creditors in this case and did not give notice of her absence.  *Trial Testimony of Nevine Carmelle*, February 11, 2015, 9:50-9:52 a.m.

**7. The relative ease of restoring parties to the *status quo ante*;**

This factor weighs against annulment.  If the court were to deny annulment it would be relatively easy to restore the *status quo ante* because Movant purchased the Property at the foreclosure sale as the foreclosing beneficiary of the trust deed and has not yet sold the property to a third party.

**8. The costs of annulment to debtors and creditors;**

This factor weighs in favor of annulment.  Without annulment, Movant will have to incur the additional costs of reconducting the foreclosure sale.  The court concludes that under the circumstances, there is no point to have another foreclosure sale since the

underlying bankruptcy case has been dismissed, and based on Debtor's dilatory actions and lack of good faith in this bankruptcy case, there is no good reason to strictly enforce the automatic stay under these circumstances.

**9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;**

This factor weighs in favor of annulment.  Movant first moved for annulment of the automatic stay in its original Motion on August 22, 2014.  As described above, it is not clear when Movant properly received notice that Debtor's automatic stay affected the Property, but the court does not find that Debtor properly gave notice of the bankruptcy filing to Movant and its agent, Sage Point in April 2014.  Based on these circumstances, it appears that Movant moved with reasonable speed to obtain relief.

**10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;**

This factor is duplicative of factor 9.

**11. Whether annulment of the stay will cause irreparable injury to the debtor;**

This factor weighs in favor of annulment.   Even if annulment relief is not granted, there will likely be another foreclosure sale, which would most likely oust Debtor from title to the Property in light of the appropriateness of granting *in rem* relief under 11 U.S.C. § 362(d)(4) on the Motion as discussed herein.

**12. Whether stay relief will promote judicial economy or other efficiencies.**

This factor weighs in favor of annulment.  There is no reason to force Movant to start the foreclosure process over or initiate a new unlawful detainer action.

The court finds factors 1, 2, 3, 4 and 6 from the *Fjeldsted* case to be particularly influential in its analysis of Movant's request for annulment of stay. These factors indicate Debtor's lack of good faith as evidenced by its efforts to delay or hinder Movant's state law remedies regarding the Property, as well as by Debtor's failures to comply with the requirements of the Bankruptcy Code, such as filing a skeletal bankruptcy petition with insincere schedules and failing to appear at the meeting of creditors under 11 U.S.C. §

341(a).  Relief under 11 U.S.C. § 362(d)(1) for cause with annulment of stay should be granted for these reasons.  Relief under 11 U.S.C. § 362(d)(4) for *in rem* relief should be granted because of the multiple bankruptcy case filings affecting the Property and the petition in this case was intended to delay or hinder creditors.

Based on the reasons set forth above, and the arguments in the moving papers, IT IS HEREBY ORDERED that the further hearing on the Motion for Relief from Stay on March 3, 2015 at 11:00 a.m. is vacated, the Motion is taken under submission and granted for the reasons stated in this memorandum decision and the automatic stay is annulled retroactively to validate the postpetition acts of Movant and Sage Point in conducting the foreclosure sale and prosecuting the unlawful detainer action.

This memorandum decision constitutes the court's findings of fact and conclusions of law on the Motion.

Counsel for Movant is ordered to submit a proposed final order granting stay relief consistent with this memorandum decision on the court's mandatory stay relief form order within 7 days of entry of this decision.

IT IS SO ORDERED.

###

Date: February 25, 2015

_____
Robert Kwan
United States Bankruptcy Judge